determine whether he should or should not enforce the rule in each specific instance of its actual violation. I think that the case is controlled by the judgments in Montgomery v. Buffalo Railway Co., 165 N. Y. 139, 58 N. E. 770, and Monnier v. N. Y. C. & H. R. R. R. Co., 175 N. Y. 281, 67 N. E. 569, 62 L. R. A. 357, 96 Am. St. Rep. 619.

The harm from the error was radical, because the court in effect instructed the jury that it might find that the plaintiff had not violated the rule. If the jury found compliance and credited the story of the plaintiff, it could then regard the act of the conductor as an unprovoked and unjustifiable assault. If, on the other hand, the question of substantial compliance had not been submitted, and the jury had been instructed that the rule was reasonable, as the court decided, and that the defendant had a right to enforce it, even to ejection finally by force and such force as was necessary, we cannot say that it would have arrived at the verdict rendered, or in any event at the amount thereof.

The judgment and order must be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.

---

(109 App. Div. 651)

FREELAND v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. December 8, 1905.)

CARRIERS—INJURY TO PASSENGER—COLLISION OF STREET CAR WITH WAGON—NEGLIGENCE.

In an action for injury to a passenger in a street car from collision with a heavily loaded wagon, which, after meeting the car and passing the front of it, two to four feet from it, struck a curve and slewed into the car, the motorman, who had the car under such control that it was stopped within a foot after the collision, cannot be held to have been negligent; the circumstances not indicating an apparent danger requiring him to stop and wait for the wagon to pass.

Appeal from Trial Term, Kings County.

Action by Maria L. Freeland against the Brooklyn Heights Railroad Company. From a judgment for plaintiff, and from an order denying a motion for new trial (88 N. Y. Supp. 264), defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, RICH, and MILLER, JJ.

I. R. Oeland, for appellant.
James C. Cropsey (Charles C. Clark, on the brief), for respondent.

RICH, J. This action was brought to recover damages for a personal injury alleged to have been sustained through the negligence of the defendant's servants and employés in the operation of one of its street cars, which collided with a heavily loaded coal truck. It was charged that the defendant was negligent and careless in the management and operation of a defective car, and also negligent and careless in employing an unfit and incompetent motorman.

The plaintiff was a passenger in one of the defendant's closed cars, and upon the trial testified that just previous to the accident—

"I was sitting there talking. It was going fast, but still I couldn't tell just exactly how fast. I know the car was going fast, but I don't know how many miles an hour. When the car got about two blocks from the ferry, something struck the car, and it made a terrible loud noise. I didn't know what it was. And then the glass and everything all splintered, and something struck me in the back, and it struck my sister in the back of the head. Q. What happened to you when you were struck in the back? A. It threw us over onto the other side of the car, and I struck my right knee, and cut all my hands with the glass. Before this, before I heard this loud crash, the car had not lessened its speed any, that I know of. Q. Can you state that it did not? A. No; it was going right straight along. Q. Afterwards, did you see what it was that struck the car? A. Afterwards I had got settled on the other side. I couldn't— When I got up off the floor— But I couldn't tell what it was. I mean I couldn't tell, because I didn't see it strike. But the only thing I saw in the neighborhood of the car at that time was this big, black truck. I couldn't say how many horses it had on the truck, because I was too frightened; but I think there was three. The truck was right close against the car, at the side of the car. The truck was right against it, just so that it couldn't help but come against it. It struck it that way. That was the side of the car upon which I was seated. There were three windows and part of the woodwork of the car broken at the time."

Upon this evidence the plaintiff rested her case, and counsel for the defendant moved to dismiss upon the ground that the plaintiff had failed to show negligence on the part of the defendant, and had failed to establish a cause of action. The motion was denied, and an exception taken.

The motorman of the car upon which the plaintiff was a passenger testified:

That the truck was coming from Fulton Ferry. "Just as I had passed, it collided with the side of my car. This truck caught the curve, setting it into the side of my car. This coal wagon and horse, when I first saw it, was ten feet away from me. It was right alongside of the track, coming up. Until it began to slew there was room enough there for my car to go by. * * * The horses and driver had just passed me. Then I say it slewed towards the car. It came in contact with the third stanchion of the car and broke three panes of glass. As soon as I saw this wagon slew..I stopped the car right away; stopped it as quick as I could. * * * The wagon was driving about two feet away from my car."

On cross-examination he said:

"I didn't have any power on at all. After the wagon struck my car, the car did not go a foot before it stopped."

The driver of the truck testified:

"I was coming up with a big load, up the hill, and the car was coming down on a slow gait, and just as I got to the frog my truck slipped and catched the car windows. When I commenced to slide, the car was just right even with the frog, about a foot from the frog. * * * The truck struck the first or second window of the car. * * * I had on two horses, and I was coming up the hill. Until my truck slid, the car could pass; plenty of room."

On cross-examination he said:

"I was going slow— walking slow; you can't go fast with a big load on; just creeping along, trying to get my way up the hill. * * * I was driving about three or four feet from the track on which the car was coming. He thought he could pass me, and I could have passed him, only for the frog. I mean by the frog that there is a curve comes around and I slid on that."

This was substantially all the evidence given on the trial relating to the accident. At the close of the evidence the defendant's counsel re-

newed his motion for a nonsuit on the ground that the plaintiff had failed to establish a cause of action and failed to show that the accident happened by reason of the negligence of the defendant. The motion was denied, and the court submitted the case to the jury upon the theory that there was sufficient evidence to warrant them in finding the defendant negligent because of the rate of speed at which the car was going, and that the motorman was negligent in "not paying sufficient attention to the approach of this loaded wagon, and either stopping the car entirely or acting in such a manner as to avoid the accident." In this I think the learned trial court was incorrect. There was no evidence that the motorman was careless or inattentive in the management of the car. He is not shown to have had any reason to anticipate a collision. The wagon was not on the car track. It was from two to four feet away from the track. There was ample room for the car and truck to have safely passed, if the wagon had not struck the curve and slewed into the car. The front of the car and wagon had passed before the wagon commenced to slew, and the speed of the car had been reduced to such an extent that it was stopped within a foot after the collision. It cannot be said that the approach of a heavily loaded wagon on a municipal highway, two to four feet outside of and away from the track of a street railway, is such an indication of apparent danger as to charge the employés of a railway corporation with the duty of stopping a car and waiting for the vehicle to pass.

There was no evidence justifying the conclusion that the car was running at a great or unusual rate of speed; neither was there any evidence to support the respondent's contention that the switch was adjustable, or could be set in such manner as that the wheel of a wagon coming in contact with its rails when set one way would slide toward the track, and when set the other way would slide away from the track, or that there was a frog used in connection with the switch.

The judgment and order must be reversed, and a new trial granted; costs to abide the event. All concur.