ELIZABETH DAY, Appellant, *v.* BROOKLYN CITY RAILROAD
COMPANY and SHEFFIELD FARMS COMPANY, INC.,
Respondents.

Second Department, December 16, 1921.

Street railways — action by passenger against street railway and
owner of truck for injuries received when two vehicles proceeding
in opposite directions collided in passing — verdict in favor of
defendants not against evidence — instruction that want of care
must be shown against one or both defendants proper.

In an action by a passenger of a street railroad against the railroad and the
owner of a truck to recover for personal injuries, it appeared that at the
time of the accident a recent heavy snow had left a roadway narrowed
to the space opened by the snow plows, leaving a compacted surface
between the rails; that the truck was going west on the west-bound
trolley track and that the rear end of the truck as it passed the car going
in the opposite direction came against the car with a glancing contact
that broke the windows and threw plaintiff from her seat.

*Held*, on all the evidence, that the verdict in favor of both defendants was
not against the weight of the evidence.

There was no error in the instruction by the court that in order for the
plaintiff to recover, want of care must be proven as against one or both
defendants.

KELLY, J., dissents, with opinion.

APPEAL by the plaintiff, Elizabeth Day, from a judgment
of the Supreme Court in favor of the defendant Brooklyn
City Railroad Company, entered in the office of the clerk of
the county of Kings on the 26th day of February, 1921, upon
the verdict of a jury, and also from an order, entered in said
clerk's office on the 1st day of March, 1921, denying plaintiff's
motion to set aside the verdict and for a new trial made upon
the minutes.

Appeal by the plaintiff, Elizabeth Day, from a judgment
of the Supreme Court in favor of the defendant Sheffield
Farms Company, Inc., entered in the office of the clerk of the
county of Kings on the 31st day of March, 1921, upon the
verdict of a jury, and also from an order, entered in said clerk's
office on the 1st day of March, 1921, denying plaintiff's motion
to set aside the verdict and for a new trial made upon the
minutes.

On February 9, 1920, plaintiff was a passenger on a Brooklyn

City railroad trolley car west-bound along Fulton street. Near Arlington place this street car met a large four-horse milk truck of the other defendant, which was traveling east. A recent heavy snowfall had left a roadway narrowed to the space opened by the snow plows, leaving a compacted surface between the rails. The motorman testified that his speed was five miles an hour; however, the driver of the milk truck estimated the car's speed as eight or ten miles an hour. Neither vehicle stopped. The milk truck's left wheels were about half a foot beyond the left rail, owing to the greater width of the truck. The front of the truck passed the trolley car by a good clearance (estimated at between two and three feet), but in some way the rear of the truck came against the street car's side with a glancing, scraping contact that broke two window panes and threw plaintiff from her seat and spilled milk over another passenger. After a trial with a charge to which no exception was taken, the jury gave a verdict for defendants.

*Matthew W. Wood,* for the appellant.

*Andrew F. Van Thun, Jr.* [*George D. Yeomans* with him on the brief], for the respondent Brooklyn City Railroad Company.

*George W. Alger,* for the respondent Sheffield Farms Company, Inc.

PUTNAM, J.:

Here was an issue of fact, as to the accident, coupled with a wide variance between medical men as to plaintiff's alleged injuries. The driver of the milk truck stated that the car went by a " stop " sign. But the jury could well accept testimony from the railroad that there was no " stop " sign at Arlington place, hence that the truck driver's recollection had confused this place (where there is no cross street) with Nostrand avenue. The jury were not required to accept the estimate of the truck driver that the car went eight to ten miles an hour. Apparently they chose to take the motorman's own testimony of five miles an hour, rather than an estimate from one on a vehicle passing in an opposite direction.

After the front of the truck passed the car front, with

sufficient clearance, the later side contact raised a question for the jury. Was this slue on the ice by want of reasonable care? Should the truck driver have come to a stop until the car passed?

When plaintiff rested, the railroad company went forward with its proofs, which made out a good explanation as against its passenger. (*Freeland* v. *Brooklyn Heights Railroad Co.,* 109 App. Div. 651.) The evidence from plaintiff (even without that from the defense) shows a state of facts — makes an explanation — and that explanation did not establish negligence on the part of the carrier. In a similar appeal this court declared: " To hold that a clearance of not less than eighteen inches was not sufficient for the passage of a trolley car in the streets of the great city of New York and its principal boroughs, would be to practically stop all traffic, and the law is not thus impracticable." (*Rosenblum* v. *Brooklyn Heights Railroad Co.,* 153 App. Div. 304, 306.) Where such issues went to the jury without a single exception, we must be shown strong reasons to reject their verdict. I do not find any in the instruction (which seems to me vitally essential) that in order for plaintiff ·to recover, want of care must be proved as against one or both defendants.

Hence I advise that the judgments and order be affirmed, with costs.

BLACKMAR, P. J., MILLS and RICH, JJ., concur; KELLY, J., reads for reversal.

KELLY, J. (dissenting):

There should be but one judgment in the action. There is no warrant for separate judgments on the verdict of the jury.

I am of opinion that the verdict in this case acquitting both defendants of negligence is contrary to the evidence. On February 9, 1920, the plaintiff with her two daughters was a passenger on one of the street surface railroad cars of the defendant railroad company. She was seated on one of the seats running lengthwise along the left side of the car as it proceeded west, or downtown, on Fulton street, Brooklyn. There had been a heavy fall of snow which was banked up on either side of the two street railroad tracks. At a point

in the vicinity of Nostrand avenue, which crosses Fulton street at right angles, the street car met a large truck of the defendant Sheffield Farms Company, Inc., loaded with milk and drawn by four horses. The milk truck was traveling east on the cleared car tracks. It was of unusual width, so that with its right wheels between the rails of the east-bound car tracks, the left wheels were in the space between the east and west-bound tracks.

The motorman testified that he was traveling at the rate of five miles an hour. The driver of the milk wagon testified that the trolley car was going "pretty fast," that it averaged about eight or ten miles an hour. The motorman, on meeting the milk truck, did not stop or slacken the speed of his car. The milk truck driver testified that there was a "stop" sign, but the motorman paid no attention to it, but passed right by him. The four horses passed the motorman but the rear end of the milk truck collided with the car, breaking the windows, throwing the plaintiff from her seat and injuring her.

Neither the motorman nor the milk truck driver saw the collision. They heard the noise of the breaking glass and brought their respective vehicles to a stop. A motorman on one of the cars of the railroad company which was following the milk truck testified that "the rear end of the truck hit a piece of ice or a glassy spot there on the rail and slid down and gave a sort of glancing blow between the middle and the rear of the car." But it is very evident that the witness was merely stating his opinion as to the cause of the accident, because there is no evidence that he saw the wheels of the milk truck or that they were visible to him. His statement that the "rear end of the truck hit a piece of ice or a glassy spot there on the rail" is impossible, because the rear end of the truck was elevated above the street and the rails; nor were the wheels of the truck on the rails, nor did the witness testify that he saw any "piece of ice or a glassy spot." The right wheels were between the rails of the east-bound track, and the left wheels were between the east and the west-bound tracks. The motorman, who testifies that the truck had passed the front platform of his car, says: "The truck was going eastbound and the rear wheels slipped around the middle of the car when we passed already," He says the front wheels of the

truck did not slip, and of course he could not see, and did not see and does not testify that he saw the truck or the rear wheels of the truck after it passed him. The driver of the milk truck on the front seat, managing four horses, could not see and does not claim that he saw the rear of his truck. He says: " My rear hind wheel on the left side may have skipped a little bit which happened to hit this car; so I didn't really exactly know until I had to stop."

The learned trial justice, in a charge to which no exception was taken, said to the jury: " Very frequently throughout the trial here the lawyers in the case, some of the witnesses, and sometimes I don't know but that the judge used the word ' accident.' She is not entitled to any money at all if this was an accident; she is not suing to recover money here on the theory that there was an accident. An accident might bring about such a situation where nobody at all would be to blame, and that is practically the position of the defendants here. Their plea here is two fold. In the first place they say — particularly the railroad company — that the accident was unavoidable and that they were not guilty of any negligence at all. Their car, they say, was on a fixed rail and could turn neither to the right nor to the left and that while pursuing its usual direction going downtown with passengers their car was run into and a collision followed as the result of the carelessness of the co-defendant, the milk company; so that the railroad company says that as far as they are concerned the accident was unavoidable, their theory being that they had done everything in their power that they lawfully could be expected to do before the happening of the event; and they point out to you that the four horses and the forward part of the truck had safely passed their car and that the impact took place by the rear wheels of the truck either skidding or sliding into the side or middle of their car and thus causing the accident."

The trial justice told them that the railroad company, while it was not an insurer of the plaintiff, owed her a high degree of care and that it was obliged to use that degree of care and caution which the situation demanded, and he said: " When you come to measure the negligence charged by the woman against the railroad company you will have to take the story

of the railroad company in conjunction with it and weigh them both and bring your minds back to the situation which the evidence discloses here. If you make up your minds that the position of the railroad is as their evidence is before you you can exonerate them from any blame and put the blame upon the other defendant; or, if you don't believe their version of it, you can hold both defendants — either or both."

The learned justice also charged the jury as to the obligation of the truck driver to " use due care." He recited the evidence of the truck driver and said: " He also said, and you will recall his testimony — I do not purport to quote it exactly because it is not my memory of it which is controlling upon you; but he made some statement on the stand that either some sliding or some piece of ice caused his rear wheels to run into the car and he said he had no knowledge of it until he heard the crash," and later in the charge, summarizing the evidence and the claims of the defendants, he said: " They say they gave it [the highest degree of care] to her and that they were not responsible for this situation at all; that they did all that they reasonably could and that because a truck comes along and the wheels slide on the ice and the crash comes into the side of their car, in common sense and justice they should not be held for it." He also told the jury: " The plaintiff must prove not that an accident happened, but that either both or one of these people were careless and through that carelessness she received the injury."

The jury has acquitted both defendants of negligence. There is no claim that the plaintiff was guilty of contributory negligence. She had intrusted herself to the care of defendant railroad company. She received injuries which confined her to her bed for four weeks and later obliged her to go to the Kings County Hospital for treatment, where she remained for twelve or fourteen days. Her medical witnesses testify that her injuries are permanent.

I think the verdict is contrary to the evidence. According to the motorman the horses and the front of the milk truck cleared his car and the accident was occasioned by some faulty operation of the truck after it passed him. On the other hand, the driver of the milk truck testifies that owing to the bank of snow on either side of the rails the left wheel

and the left side of the truck encroached on the space between the tracks and that the motorman came on at the rate of eight or ten miles an hour without stopping or slackening speed and the collision occurred, how, he does not say because he could not and did not see it. But we know that the left side of the milk truck struck the car, breaking the glass and spilling the milk into the car and over the passengers. It seems to me the verdict of the jury is inconsistent. They accept the story of the truck driver to clear the milk company and the story of the motorman to clear the railroad company, but they fail to take note of the evidence of the truck driver that the motorman attempted to pass at eight to ten miles an hour without stopping or slackening speed, and in like manner disregard the fact that the motorman testified that the truck cleared him as it passed.

For two heavy vehicles to attempt to pass in the narrow gully between the snow banks without reducing speed would seem to invite the collision which did in fact happen. It was an " accident," but in the case of a passenger in a railroad car the happening of the accident justified a presumption of negligence against the railroad company. The learned trial justice was hardly exact when he said to the jury, " She is not entitled to any money at all if this was an accident; she is not suing to recover money here on the theory that there was an accident * * *. The plaintiff must prove not that an accident happened, but that either both or one of these people were careless and through that carelessness she received the injury."

On the contrary, the Court of Appeals through Judge CULLEN said: " The management and control of the transportation of the passenger is wholly confided to the employees operating the car, and the former cannot be expected to be on the watch either as to its management or that of other vehicles, or if a collision takes place, be able to account for its occurrence. Therefore, when such a collision occurs there arises a presumption of negligence on the part of the carrier, which calls upon it for explanation." (*Loudoun* v. *Eighth Ave. R. R. Co.,* 162 N. Y. 380.)

The happening of an accident may be explained and a jury may accept the explanation as exculpating the carrier from

negligence. But the trouble with the defense in the case at bar is that there was no explanation. The theory of the truck slipping or skidding on the rails of the trolley track or on a piece of ice was simply a theory, and it is not supported by the evidence in the case. I think this verdict which sends this woman passenger, injured and without fault on her part, out of court with two judgments for costs entered against her, was wrong and contrary to the evidence and that she should be granted a new trial.

Judgments and order affirmed, with costs.